## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **GARRY DAMON WORTHEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **V.** | )    **CIVIL ACTION NO. 2:07-cv-63-WKW** |
| | ) |
| **DIANE HARRIS, SHERIFF, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Diane Harris and Albert McKee, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

Garry Damon Worthey, was booked into the Butler County Jail on April 5, 2006 and was released into the custody of the Department of Correction on September 15, 2006. Plaintiff was incarcerated on charges of trafficking cocaine, possession of marijuana, resisting arrest, giving a false name and attempting to escape. (Exhibit A, Inmate Release Sheets of Garry Damon Worthey.) The Plaintiff was both a pretrial detainee and a convicted inmate during his incarceration at the Butler County Jail. (Exhibit B, Affidavit of Albert McKee[1], "McKee Aff." ¶ 3.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff claims that Defendants violated his constitutional rights by failing to provide

---

[1] Capt. McKee is employed by the Butler County Sheriff's Office and assigned to serve as the Jail Administrator of the Butler County Jail. He has been employed in this position for three years and has obtained the rank of Captain. He is a graduate of the Alabama Jail Management School. (McKee Aff. ¶ 2.)

him proper medical treatment after he broke his hand in a fight with another inmate, by not paying for treatment for his hand, and by "rush[ing] [him] out of the County" after he was sentenced. Plaintiff requests the following relief: an operation on his hand, all medical expenses paid, $100, 000 in general "damages and pain and suffering," legal and attorney fees paid and a full release from his conviction. (Plaintiff's Compl. pp. 2-4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit C, Affidavit of Diane Harris[2], "Harris Aff.," ¶ 5; McKee Aff. ¶4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

### A.    LACK OF MEDICAL ATTENTION

It is the policy of the Butler County Sheriff's Office that all inmates confined in the Butler County Jail are entitled to a level of health care comparable to that available to citizens in the surrounding community, which will ensure their physical and emotional well-being. (Harris Aff. ¶ 11; McKee Aff. ¶ 10.)

Medical care rendered to inmates in the Butler County Jail is delivered under the direction of a licensed health care provider. (Harris Aff. ¶ 12; McKee Aff. ¶ 11.) No health care personnel or jail officer or other employee of the Sheriff's Office will ever summarily or

---

[2] Sheriff Harris served as the duly elected Sheriff of Butler County, Alabama, from January 1995 through January 2007. (Harris Aff. ¶ 2.)

arbitrarily deny an inmate's reasonable request for medical services.  (Harris Aff. ¶ 13; McKee Aff. ¶ 12.)  Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.  (Harris Aff. ¶ 14; McKee Aff. ¶ 13.)  Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Harris Aff. ¶ 15; McKee Aff. ¶ 14.)

It is the policy of the Butler County Sheriff's Office to allow inmates incarcerated in the Butler County Jail to request health care services at any time.  (Harris Aff. ¶ 16; McKee Aff. ¶ 15.)  Two methods may be utilized by inmates incarcerated in the Butler County Jail in order to secure health care services:

    a.    <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the jail staff at any time.

    b.    <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the jail staff.

(Harris Aff. ¶ 17; McKee Aff. ¶ 16.)

Requests for medical treatment will be accepted by members of the jail staff at any time.  (Harris Aff. ¶ 18; McKee Aff. ¶ 17.)  When a non-emergency request for medical treatment is made to a member of the jail staff, the staff member receiving the request will place the request in a file folder for the jail nurse to review.  A registered nurse comes to the jail to examine inmates requesting medical care every Monday, Wednesday, and Friday.  The nurse will come to the jail on other days to examine inmates if necessary.  If the nurse feels that an inmate needs further medical attention, an appointment is made for the inmate to see a local physician.  Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered.  (Harris Aff. ¶ 19; McKee Aff. ¶ 18.)

Medical requests of an emergency nature are to be handled immediately. In an emergency situation, inmates are transported to the Stabler Memorial Hospital in Greenville, Alabama. (Harris Aff. ¶ 20; McKee Aff. ¶ 19.)

A corrections officer at the Butler County Jail is assigned to the position of medical officer and is charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive further medical treatment. (Harris Aff. ¶ 21; McKee Aff. ¶ 20.)

All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a jail official. Should the physician request, a jail officer will be present for any and all examinations the treating physician deems appropriate. (Harris Aff. ¶ 22; McKee Aff. ¶ 21.)

Plaintiff was involved in an altercation with another inmate on July 7, 2006. (Exhibit D, Incident Report.) On July 14, 2006 Plaintiff was examined by Dr. Roger H. Smith of the Stabler Clinic in Greenville, Alabama due to Plaintiff's complaints of swelling of both hands and redness in his left eye due to injuries he suffered in the altercation. (Exhibit E, Plaintiff's Medical File, p. 1-2.) Dr. Smith found that Plaintiff had a ruptured blood vessel with a subconjunctival hemorrhage in his left eye and that both hands were swollen, with the left being more swollen than the right. (Ex. E, Plaintiff's Medical File, p. 2.) Plaintiff's hands were x-rayed at this time and Dr. Smith found no evidence of a broken bone, fracture or dislocation. (Ex. E, Plaintiff's Medical File, p. 2.) Dr. Smith concluded that Plaintiff's hands suffered from "soft tissue trauma" and bruising from the fight and prescribed Darvocet, a pain medication generically named Propoxyphene, along with ice packs to treat Plaintiff's hand injuries. (Ex. E, Plaintiff's Medical File, p. 2.) Dr. Smith determined that Plaintiff's eye injury should resolve on its own without medication. (Ex. E, Plaintiff's Medical File, p. 2.) This prescription for

Darvocet was filled and paid for by the Butler County Commission. (Ex. E, Plaintiff's Medical File, p.3-4.)

Plaintiff was again examined by Dr. Smith on August 2, 2006 due to his complaints to jail employees of discomfort in his right hand and that he could not fully extend his right middle finger. (Ex. E, Plaintiff's Medical File, p. 6.) Dr. Smith found some swelling along Plaintiff's right middle finger but noted that Plaintiff could fully extend this finger. (Ex. E, Plaintiff's Medical File, p. 6.) Dr. Smith determined that a foreign body could be present in the hand or a ruptured tendon that did not show up on the x-ray and concluded that an MRI could be performed to determine the source of the swelling. (Ex. E, Plaintiff's Medical File, p. 6.)

Around August 10, 2006, Capt. McKee discussed the Plaintiff's medical care with Sheriff Harris. Capt. McKee informed Sheriff Harris that Dr. Smith had stated that an MRI was the next step in determining the cause of the swelling in Plaintiff's hand. The Sheriff and Capt. McKee agreed that funding from the Butler County Commission would be used to pay for the MRI. The Sheriff and Capt. McKee also discussed Plaintiff being treated by a specialist. The Sheriff and Capt. McKee agreed that Plaintiff would need to pay for the cost of treatment from a specialist, as this would be elective medical treatment, not necessary or emergency medical care. (McKee Aff. ¶ 22.)

On August 15, 2006 Capt. McKee informed Dr. Smith's office that the Butler County Commission funds would be used to pay for an MRI of Plaintiff's hand and asked that it be scheduled. (McKee Aff. ¶ 23; Ex. E, Plaintiff's Medical File, p. 6.) The MRI was performed on August 17, 2006 at the Stabler Memorial Hospital in Greenville. (Ex. E, Plaintiff's Medical File, p. 8.) The performing physician, Dr. Stanley B. Winslow, found no broken or fractured bone and found specifically that the bone was normal and not infected. (Ex. E, Plaintiff's Medical File, p.

8.)  Dr. Winslow determined that Plaintiff had swelling in his right middle finger due to an inflammatory reaction from Plaintiff's physical altercation.  (Ex. E, Plaintiff's Medical File, p. 8.)  Dr. Winslow prescribed Plaintiff no medication.  (Ex. E, Plaintiff's Medical File, p. 8.)

After Plaintiff was sentenced, Capt. McKee notified the Department of Corrections of Plaintiff's injury and treatment so that the DOC would be aware of the injury and how it had been treated while Plaintiff was housed in the Butler County Jail.  Capt. McKee also sent Plaintiff's entire medical file to the DOC.  (McKee Aff. ¶ 24.)  Neither Sheriff Harris, Capt. McKee nor any other Butler County Sheriff's Office employee took any action to have Plaintiff taken into DOC custody because of his injury or because of the cost of providing him medical treatment.  (Harris Aff. ¶ 13; McKee Aff. ¶ 24.)

Plaintiff's hand was examined by Nurse Richards at least four times following the altercation.  (Ex. E, Plaintiff's Medical File, p. 12-15.)  Plaintiff was seen by a physician at least three times between the date of the altercation and the date he was released into DOC custody.  (Ex. E, Plaintiff's Medical File, p. 2, 6, 8.)  The entirety of Plaintiff's treatment by Nurse Richards and by Dr. Smith was paid for through the Butler County Commission.  The MRI performed on Plaintiff's hand was paid for by the Butler County Commission.  (Ex. E, Plaintiff's Medical File, p. 1, 4, 5, 9; McKee Aff. ¶ 22.)

The records show that every time the Plaintiff made a request regarding his injured hand, jail staff and medical professionals addressed his concerns.  (Ex. E, Plaintiff's Medical File.)  The Plaintiff was also given his prescribed medication as instructed by Dr. Smith as well as over-the-counter pain medication.  (Ex. E, Plaintiff's Medical File, p.4, 5.)

**B.    GRIEVANCE PROCEDURES.**

It is the policy of the Butler County Sheriff's Office that members of the jail staff receive

and answer any written grievances or requests made by inmates to the Sheriff, Capt. McKee, or any other correctional officers in a timely manner. (Harris Aff. ¶ 6; McKee Aff. ¶ 5.)

Inmates housed in the Butler County Jail are furnished with inmate request forms for the purpose of stating their requests or grievances in writing. Jail personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day. (Harris Aff. ¶ 7; McKee Aff. ¶ 6.)

Internal grievance procedures at the Butler County Jail are available to all inmates. It is the policy of the Butler County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Harris Aff. ¶ 8; McKee Aff. ¶ 7.)

Inmates are informed by corrections officers regarding the grievance policy at the Butler County Jail. Inmates are instructed to submit grievances on Inmate Request Forms. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. If an inmate is not satisfied with the first answer to his grievance, Butler County Sheriff's Office policy allows the inmate to appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Harris Aff. ¶ 9; McKee Aff. ¶ 8.)

Sheriff Harris has never received a grievance or request form from the Plaintiff concerning any of the allegations made the basis of his Complaint. Per Butler County Sheriff's

7

Office policy, an inmate has the opportunity to appeal any grievance to the Sheriff or Capt.

McKee if he were not satisfied with the response at the lower levels in the chain of command.

The Plaintiff has not appealed any grievance to Sheriff Harris or Capt. McKee.  Accordingly, the

Plaintiff has failed to exhaust his administrative remedies at the Butler County Jail.  (Harris Aff.

¶ 10; McKee Aff. ¶ 9.)

Defendants have complied with all policies and procedures of the Lee County Detention

Facility.  I am not aware of nor have I authorized or allowed any deviation from said policies and

procedures.  (Harris Aff. ¶ 23; McKee Aff. ¶ 25.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed

for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to

the United States Constitution.   Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989)

(holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity);

Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official

capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d

1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to

Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th

Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county

sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a

person, acting under color of law, from depriving another of his rights secured by the United

States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

B.    **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

1.    **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Butler County Jail.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Butler County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing

this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998)

(affirming dismissal of prison action due to failure to exhaust administrative remedies); Booth v.

Churner, 532 U.S. 731 (2001) (concluding that the exhaustion of administrative remedies is now

mandatory and courts cannot excuse exhaustion).[3]

### 2. Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff

demonstrate that he suffered physical injury before instituting a complaint based upon jail

conditions.  The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e)

requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the

injuries do not have to be significant.  Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.), vacated,

197 F.3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F.3d 970 (11th Cir.

2000) (en banc).  In the present action, the Plaintiff has not alleged that he has suffered more

---

[3] See Terry Shane Williams v. Cecil Reed, et al., United States District Court for the Northern District of Alabama, Middle Division, No. CV-99-BU-2938-M, slip op. at 3-4 (N.D. Ala. August 15, 2000) (adopted by district judge September 21, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Richard Dale Woodham v. Bill Lands, United States District Court for the Northern District of Alabama, Middle Division, No. CV-00-AR-0170-M, slip op. at 4-5 (N.D. Ala. November 7, 2000) (adopted by district judge December 4, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Quinton M. Johnson v. Sgt. Robinson, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-616-E, slip op. at 3-5 (M.D. Ala. January 12, 2001) (adopted by district judge January 31, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); David Wilson Bell, Sr. v. Tina Riley, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-731-E, slip op. at 4-5 (M.D. Ala. February 21, 2001) (adopted by district judge March 20, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); Mitchell Butler Hicks v. Jack Day, et al., Circuit Court of Clarke County, Alabama, No. CV-00-280M, slip op. 1-3 (March 21, 2001) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); But see, Garner v. Weeks, No. 00-14582 (11th Cir. April 10, 2001).

than a *de minimis* injury as a result of the allegations described in his Complaint. (See Plaintiff's Compl.) Further, the evidence establishes that Plaintiff has not suffered more than a *de minimis* injury. Further, Plaintiff's Complaint fails to allege that he suffered an injury due to the alleged lack of medical care. As a result, the case is due to be dismissed pursuant to 42 U.S.C § 1997e(e). Plaintiff's injury was due to a fight with another inmate, not due to an alleged lack of medical care.

C.    **Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and Jail official of Butler County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th

Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

## 1.  Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition.

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment[4] violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that, on the occasions where the Plaintiff complains he did not receive adequate medical treatment, he was actually treated by a licensed and trained medical doctor and nurse. Plaintiff was examined and treated by medical professionals at least seven times between the time of the altercation with another inmate and his release to DOC custody. Plaintiff repeatedly claims that his hand was broken when he was fighting with another inmate. However, both physicians who examined Plaintiff's hand and the results from the x-ray and the MRI all found that Plaintiff's hand was not broken or even fractured. Plaintiff claims that an interval of three weeks passed before he was sent to the "emergency room" after his injury. However, Plaintiff was involved in an altercation on July 7, 2006 and Plaintiff was examined by Dr. Smith on July 14, 2007. Further Plaintiff falsely claims that his injury "never got treated," when in

---

[4] Although state government officials' treatment of pretrial detainees is technically governed by the Fourteenth Amendment Due Process Clause, not the Eighth Amendment, the legal standards for provision of medical care are the same under both amendments. See Lancaster v. Monroe County, 116 F.3d 1419, 1425 n. 6 (11th Cir.1997).

fact, Plaintiff was seen by a health care professional at least seven times following his hand injury. Also, the jail officials used Butler County funding to pay for all of Plaintiff's medical care including his pain medication, his doctor's visits and his MRI.  The sheriff and the jailers did their duties in getting the Plaintiff to see medical staff for evaluation.  Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff.

An inmate does not have a right to a ***specific*** kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants who are jailers do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v.

14

Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[5] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by a registered nurse and two physicians. The sheriff and the jailers, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors. Therefore, Defendants are entitled to qualified immunity from Plaintiff's claims.

> **2.    No clearly established law provided the Defendants with fair warning that their conduct was unlawful.**

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or

---

[5] The medical director was a trained and licensed nurse. 302 F.3d at 846.

federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful in any of the areas of which the Plaintiff complains.  Therefore, the Defendants are entitled to qualified immunity.

### D.    Plaintiff has failed to allege sufficient personal involvement on each claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).  The Plaintiff has failed to sufficiently allege that Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights.  In fact, the Defendants are not mentioned in the Complaint except in the spaces where Plaintiff listed the names of the defendants.  As such, all Plaintiff's

claims are due to be dismissed.

      **E.**      **To the extent that any claims against the Defendants are based on the theory of *respondeat superior*, such claims must fail.**

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

      **F.**      **Habeas Corpus**

In the alternative, due to the nature of a portion of the relief requested by Plaintiff, Plaintiff's Complaint is partly a habeas corpus petition and should be treated as such.

      **G.**      **Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[6]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts Sch. of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted on this the 26th day of April, 2007.

s/Ashley Hawkins Freeman
KENDRICK E. WEBB – No. WEB022
ASHLEY HAWKINS FREEMAN – No. FRE044
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  afreeman@webbeley.com

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 26th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed a copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Garry Damon Worthey
AIS 248464
Fountain Correctional Facility
Fountain 3800
Atmore, AL 36503

s/**Ashley Hawkins Freeman**
OF COUNSEL

# Exhibit A
# Inmate Release Sheets of Garry Damon Worthey

```
                           BUTLER COUNTY SHERIFF'S OFFICE
04/23/2007    08:39:05        INMATE RELEASE SHEET                    PAGE    1
================================================================================
BOOKING NO: 060000378

INMATE NAME: WORTHEY GERRY DAMON
       ALIAS:                               RACE: B      SEX: M
       ALIAS:                               HT: 6'00"  HAIR: BLK
     ADDRESS: 1261 EL PASO CIRCLE           WT: 250   EYES: BRO
CITY/ST/ZIP: PENSACOLA, FL 32505       COMPLEX: DRK
 HOME PHONE: 000-000-0000                  SSN: ███████
        DOB: ████████2  AGE:  34        DL ST:          DLN:
  PLCE BIRTH: PENSACOLA                     SID:
       STATE: FL                         LOCID: 7368
   M. STATUS:
    RELIGION: BAPTIST
  GANG ASSOC:
SCARS/TATTOOS: TATTOO OF TOMBSTONE ON THE LEFT ARM, CROSS ON THE RIGHT ARM
KNOWN ENEMIES: G-RAPP ON THE LEFT SIDE OF HIS NECK
     REMARKS:
------------------------------ NEXT OF KIN ------------------------------------
  NEXT OF KIN: WORTHEY OCTAVIA           RELATIONSHIP: MOTHER
      ADDRESS: SAME AS ABOVE                    PHONE: 850-470-0168
  CITY/ST/ZIP: ,
      REMARKS:
----------------------------- EMPLOYER INFO -----------------------------------
     EMPLOYED: Y
EMPLOYER NAME: BTS TIRE SERVICE
      ADDRESS:
  CITY/ST/ZIP: PENSACOLA, FL 32505
        PHONE: 000-000-0000
-------------------------------- MEDICAL --------------------------------------
  HANDICAPPED:       NEEDS:
      GLASSES:       SMOKE:
MEDICAL NEEDS:       NEEDS:
    PHYSICIAN:                    PHONE: 000-000-0000
      REMARKS:

      REMARKS:
      REMARKS:
-------------------------------- PROPERTY -------------------------------------
         CASH:        $09.99
  DESCRIPTION:
ADD. PROPERTY: 2-RINGS, 1-NECKLACE, 1-CELL PHONE, 1-DL-
ADD. PROPERTY: 1-PR. BRO.SHOES 1-PR BLUE JEANS 1-STRIPPED SHIRT
ADD. PROPERTY: 1-ESR PIECE FOR PHONE 1-EARRING
   BIN NUMBER:
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS:
      REMARKS:
================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE:_____  DATE:_____  TIME:_____

BOOK OFFICER:_____  DATE:_____  TIME:_____
```

```
                         BUTLER COUNTY SHERIFF'S OFFICE
04/23/2007    08:39:05          INMATE RELEASE SHEET                    PAGE    2
=================================================================================
BOOKING NO: 060000378      INMATE NAME: WORTHEY GERRY DAMON
=================================================================================
         COURT:                    ATTORNEY ON REC:
         JUDGE:                          PHONE: 000-000-0000
       REMARKS:
       REMARKS:
---------------------------------------------------------------------------------
   BOOK DATE: 04/05/2006  BOOK TIME: 17:45  BOOK TYPE: NORMAL

  ARREST DATE: 04/05/2006          BOOKING OFFICER: STONE
  ARREST DEPT: ALABAMA STATE TROOPE    CELL ASSIGNMENT:
 ARRST OFFICER: TROOPER JEFF SPIVEY         MEAL CODE: 02   STATE OF ALABAMA
PROJ. RLSDATE: 00/00/0000               FACILITY: 01   COUNTY JAIL
 SEARCH OFFCR: SCOTT                 CLASSIFICATION:
  TYPE SEARCH: PAT                    WORK RELEASE: N
INTOX RESULTS:

        HOLDS: N
       AGENCY:              REASON:
       AGENCY:              REASON:
       AGENCY:              REASON:
       AGENCY:              REASON:

        NOTES:
        NOTES:
        NOTES:
=================================================================================
 RELEASE DATE: 09/15/2006  RELEASE TIME: 08:13   # DAYS SERVED:  164

RELEASE OFFICER: LT. SMITH
   RELEASE TYPE: INMATE TRANSFERRED TO KIL
        REMARKS: BY
        REMARKS:
        REMARKS:
=================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE:_____    DATE:_____   TIME:_____

BOOK OFFICER:_____  DATE:_____   TIME:_____
```



BUTLER COUNTY SHERIFF'S OFFICE
04/23/2007    08:39:05          INMATE CHARGE SHEET                    PAGE    3
=================================================================================
BOOKING NO: 060000378        INMATE NAME: WORTHEY GERRY DAMON
=================================================================================
    CHARGE NO:  1  DISPOSITION: RELEASED              HOLD: N

ALA STATUTE:                          # OF COUNTS:   1
    OFFENSE: TRAFFICKING IN COCAINE      WARRANT #:
      CASE #:
    BOND AMT:                                FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000           SENTENCE DATE: 00/00/0000
RELEASE DTE: 09/15/2006
ARREST DATE: 04/05/2006             ARST AGENCY: STATE TROOPER
ARST OFFICR: TROOPER SPIVEY             COUNTY: BUTLER
      COURT:                               JUDGE:
DEF ATTORNY:                      DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS: INMATE RELEASED BY B2290
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    CHARGE NO:  2  DISPOSITION: RELEASED              HOLD: N

ALA STATUTE:                          # OF COUNTS:   2
    OFFENSE: POSS. MARJ. 2ND             WARRANT #:
      CASE #:
    BOND AMT:                                FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000           SENTENCE DATE: 00/00/0000
RELEASE DTE: 09/15/2006
ARREST DATE: 04/05/2006             ARST AGENCY: STATE TROOPER
ARST OFFICR: TROOPER SPIVEY             COUNTY: BUTLER
      COURT:                               JUDGE:
DEF ATTORNY:                      DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS: INMATE RELEASED BY B2290
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    CHARGE NO:  3  DISPOSITION: RELEASED              HOLD: N

ALA STATUTE:                          # OF COUNTS:   1
    OFFENSE: RESISTING ARREST            WARRANT #:
      CASE #:
    BOND AMT:                                FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000           SENTENCE DATE: 00/00/0000
RELEASE DTE: 09/15/2006
ARREST DATE: 03/05/2006             ARST AGENCY: AST
ARST OFFICR: AST SPIVEY                 COUNTY: BUTLER
      COURT:                               JUDGE:
DEF ATTORNY:                      DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS: INMATE RELEASED BY B2290
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



```
                     BUTLER COUNTY SHERIFF'S OFFICE
04/23/2007    08:39:05        INMATE CHARGE SHEET              PAGE    4
===============================================================================
BOOKING NO: 060000378      INMATE NAME: WORTHEY GERRY DAMON
===============================================================================
    CHARGE NO:   4  DISPOSITION: RELEASED            HOLD: N

ALA STATUTE:                          # OF COUNTS:   1
     OFFENSE: GIVING FALSE NAME          WARRANT #:
      CASE #:
     BOND AMT:                              FINE:       $0.00
     BAIL AMT:
INIT APPEAR: 00/00/0000          SENTENCE DATE: 00/00/0000
RELEASE DTE: 09/15/2006
ARREST DATE: 04/05/2006           ARST AGENCY: AST
ARST OFFICR: AST SIVEY                COUNTY: BUTLER
       COURT:                           JUDGE:
DEF ATTORNY:                     DIST ATTORNEY:
    COMMENTS:
    COMMENTS:
    COMMENTS: INMATE RELEASED BY B2290
-------------------------------------------------------------------------------
    CHARGE NO:   5  DISPOSITION: RELEASED            HOLD: N

ALA STATUTE:                          # OF COUNTS:   1
     OFFENSE: ESCAPE 3RD                  WARRANT #:
      CASE #:
     BOND AMT:                              FINE:       $0.00
     BAIL AMT:
INIT APPEAR: 00/00/0000          SENTENCE DATE: 00/00/0000
RELEASE DTE: 09/15/2006
ARREST DATE: 04/05/2006           ARST AGENCY: AST
ARST OFFICR: AST SPIVEY               COUNTY: BUTLER
       COURT:                           JUDGE:
DEF ATTORNY:                     DIST ATTORNEY:
    COMMENTS:
    COMMENTS:
    COMMENTS: INMATE RELEASED BY B2290
-------------------------------------------------------------------------------
```

COPY

# Exhibit B
# Affidavit of Albert McKee

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **GARRY DAMON WORTHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. 2:07-cv-63-WKW** |
| | ) | |
| **DIANE HARRIS, SHERIFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**AFFIDAVIT OF ALBERT MCKEE**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BUTLER** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Albert McKee, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Albert McKee.  I am over the age of nineteen and competent to execute this affidavit.

2.      I am employed by the Butler County Sheriff's Office and assigned to serve as the Jail Administrator of the Butler County Jail.  I have been employed in this position for three years and have obtained the rank of Captain.  I am a graduate of the Alabama Jail Management School.

3.      I am familiar with the Plaintiff Garry Damon Worthy due to his incarceration in the Butler County Jail.  The Plaintiff was both a pretrial detainee and a convicted inmate curing his incarceration at the Butler County Jail.

4.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

5.      It is the policy of the Butler County Sheriff's Office that members of the jail staff receive and answer any written grievances or requests made by inmates to the Sheriff, myself, or any other correctional officers in a timely manner.

6.      Inmates housed in the Butler County Jail are furnished with inmate request forms for the purpose of stating their requests or grievances in writing. Jail personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.

7.      Internal grievance procedures at the Butler County Jail are available to all inmates. It is the policy of the Butler County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

8.      Inmates are informed by corrections officers regarding the grievance policy at the Butler County Jail. Inmates are instructed to submit grievances on Inmate Request Forms. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. If an inmate is not satisfied with the first answer to his grievance, Butler County Sheriff's Office policy allows the inmate to appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.

9.    Per Butler County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to me. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Butler County Jail.

10.    It is the policy of the Butler County Sheriff's Office that all inmates confined in the Butler County Jail are entitled to a level of health care comparable to that available to citizens in the surrounding community, which will ensure their physical and emotional well-being.

11.    Medical care rendered to inmates in the Butler County Jail is delivered under the direction of a licensed health care provider.

12.    No health care personnel or jail officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

13.    Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

14.    Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

15.    It is the policy of the Butler County Sheriff's Office to allow inmates incarcerated in the Butler County Jail to request health care services at any time.

16.    Two methods may be utilized by inmates incarcerated in the Butler County Jail in order to secure health care services:

            a.    <u>Verbal Request</u>:  An inmate may make a verbal request for emergency

3

medical attention to any member of the jail staff at any time.

    b.    <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the jail staff.

17.    Requests for medical treatment will be accepted by members of the jail staff at any time.

18.    When a non-emergency request for medical treatment is made to a member of the jail staff, the staff member receiving the request will place the request in a file folder for the jail nurse to review.  A registered nurse comes to the jail to examine inmates requesting medical care every Monday, Wednesday and Friday.  The nurse will come to the jail on other days to examine inmates if necessary.  If the nurse feels that an inmate needs further medical attention, an appointment is made for the inmate to see a local physician.  Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered.

19.    Medical requests of an emergency nature are to be handled immediately.  In an emergency situation, inmates are transported to the Stabler Memorial Hospital in Greenville, Alabama.

20.    A corrections officer at the Butler County Jail is assigned to the position of medical officer and is charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive further medical treatment.

21.    All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a jail official.  Should the physician request, a jail officer will be present for any and all examinations the treating physician deems appropriate.

22.    Around August 10, 2006, I discussed the Plaintiff's medical care with Sheriff

4

Harris. I informed Sheriff Harris that Dr. Smith had stated that an MRI was the next step in determining the cause of the swelling in Plaintiff's hand. The Sheriff and I agreed that funding from the Butler County Commission would be used to pay for the MRI. The Sheriff and I also discussed Plaintiff being treated by a specialist. The Sheriff and I agreed that Plaintiff would need to pay for the cost of treatment from a specialist, as this would be elective medical treatment, not necessary or emergency medical care. The entirety of Plaintiff's treatment by Nurse Richards and by Dr. Smith was paid for through the Butler County Commission. The MRI performed on Plaintiff's hand was paid for by the Butler County Commission.

23.     After my conversation with the Sheriff, I informed Dr. Smith's office that the Butler County Commission funds would be used to pay for an MRI of Plaintiff's hand and asked that it be scheduled.

24.     After Plaintiff was sentenced, I notified the Department of Corrections of Plaintiff's injury and treatment so that the DOC would be aware of the injury and how it had been treated while Plaintiff was housed in the Butler County Jail. I also sent Plaintiff's entire medical file to the DOC. Neither I nor any other Butler County Sheriff's Office employee took any action to have Plaintiff taken into DOC custody because of his injury or because of the cost of providing him medical treatment.

25.     I have complied with all policies and procedures of the Butler County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

26.     All documents attached to the Special Report are true and accurate copies of jail documents kept by me in the ordinary course of my business. I am the custodian of these records.

5

27.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


ALBERT MCKEE

**SWORN TO** and **SUBSCRIBED** before me this ____ day of April, 2007.


NOTARY PUBLIC
My Commission Expires: 2/8/2011

6

# Exhibit C
# Affidavit of Diane Harris

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **GARRY DAMON WORTHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. 2:07-cv-63-WKW** |
| | ) | |
| **DIANE HARRIS, SHERIFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF DIANE HARRIS

**STATE OF ALABAMA**           )
                                                    )
**COUNTY OF BUTLER**        )

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Diane Harris, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.       My name is Diane Harris. I am over the age of nineteen and competent to execute this affidavit.

2.       I served as the duly elected Sheriff of Butler County, Alabama, from January 1995 through January 2007.

3.       I recall no conversations or interactions with the Plaintiff, Garry Damon Worthey, during his incarceration in the Butler County Jail.   I have no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.

4.       During my terms as Sheriff, I delegated the responsibility for the day-to-day functions of the Butler County Jail to the Jail Administrator. As Sheriff of Butler County, I was responsible for promulgating the policies governing the Butler County Detention Center.

5.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

6.    It is the policy of the Butler County Sheriff's Office that members of the Jail staff receive and answer any written grievances or requests made by inmates to the Sheriff, Capt. McKee, or any other correctional officers.

7.    Inmates housed in the Butler County Jail are furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing. Jail personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.

8.    Internal grievance procedures at the Butler County Jail are available to all inmates. It is the policy of the Butler County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

9.    Inmates are instructed by corrections officers to submit grievances on Inmate Request Forms. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. If an inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.

2

10.     I have never received a grievance or request form from the Plaintiff concerning any of the allegations made the basis of his Complaint. Per Butler County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to me. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Butler County Jail.

11.     It is the policy of the Butler County Sheriff's Office that all inmates confined in the Butler County Jail are entitled to a level of health care comparable to that available to citizens in the surrounding community, which will ensure their physical and emotional well-being.

12.     Medical care rendered to inmates in the Butler County Jail is delivered under the direction of a licensed health care provider.

13.     No health care personnel or Jail officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. I took no action to have Plaintiff taken into DOC custody because of his injury.

14.     Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

15.     Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

16.     It is the policy of the Butler County Sheriff's Office to allow inmates incarcerated in the Butler County Jail to request health care services at any time.

3

17.    Two methods may be utilized by inmates incarcerated in the Butler County Jail in order to secure health care services:

> a.    Verbal Request:  An inmate may make a verbal request for emergency medical attention to any member of the Jail staff at any time.
>
> b.    Written Request:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Jail staff.

18.    Requests for medical treatment will be accepted by members of the Jail staff at any time.

19.    When a non-emergency request for medical treatment is made to a member of the Jail staff, the staff member receiving the request will place the request in a file folder for the jail nurse to review.  A registered nurse comes to the jail to examine inmates requesting medical care on every Monday, Wednesday and Friday.  The nurse will come to the jail on other days to examine inmates if necessary.   If the nurse feels that the inmate needs further medical attention, an appointment is made for the inmate to see a local physician.   Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered.

20.    Medical requests of an emergency nature are to be handled immediately.

21.    The medical officer, under the direction of the Jail Administrator, is charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment.

22.    All health care rendered to inmates will, at the health care providers's discretion, be given privately to the inmate, outside the presence of a Jail official.  Should the health care providers request, a Jail officer will be present for any and all examinations the treating

4

physician deems appropriate.

23.     I have complied with all policies and procedures of the Butler County Sheriff's Office and the Butler County Jail.  I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

24.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

DIANE HARRIS

**SWORN TO** and **SUBSCRIBED** before me this ___ day of April, 2007.

NOTARY PUBLIC
My Commission Expires:_____ My Commission Expires December 8, 2010

5

# Exhibit D
# Incident Report

# BUTLER COUNTY JAIL

## INCIDENT REPORT

| REPORTED BY: | ASSIGNED SHIFT | DATE/TIME OF INCIDENT |
|---|---|---|
| ALBERT MCKEE | JAIL ADMINSTRATOR | 7/06/06 — 13:00 |
| DATE OF REPORT | TIME OF REPORT | PLACE OF OCCURANCE |
| 7/02/06 | 14:30 | Butler County Jail |
| NAME OF SUBJECTS INVOLVED | | CELL ASSIGNMENTS/CLASSIFICATIONS |
| Gerry Worthy | | Back Side Last Cell (South |
| Cedric Hasley | | Back Side Last Cell (South. |

WITNESS (name, agency, contact number)

Lt. SHARON SMITH

SHERIFF DIANE HARRIS

Admin. ALBERT McKee

NARRATIVE (continued on back)

ON THE ABOVE DATE AND APROXIMATE TIME
I WAS NOTIFIED BY ONE OF THE INMATES
HOLLARING OUT THE WINDOW, THAT THERE WAS
A FIGHT UPSTAIRS. MYSELF SHERIFF HARRIS,
Lt. SMITH WENT UPSTAIRS. UPON ARRIVING
I WITNESS A FIGHT BETWEEN THE TWO
INMATES GERRY WORTHY AND CEDRIC HASLEY
FIGHTING. I WENT PASS SHERIFF HARRIS
AND Lt. SMITH AND BROKE UP THE FIGHT
BY SUBDUING CEDRIC HASLEY.

Respectfully submitted *Albert McKee*

# Exhibit E
# Plaintiff's Medical File



# SHERIFF'S OFFICE
## BUTLER COUNTY
334/382-6521 • 1-800-300-6344
GREENVILLE, ALABAMA 36037-1910

**DIANE HARRIS**
SHERIFF

### PLEASE COMPLETE FOR EACH INMATE RECEIVING MEDICAL TREATMENT

INMATE'S NAME _Gerry Worthy_     DATE _9-14-06_

REASON FOR MEDICAL CARE _Swollen hand &_
_eye is very red_ _____

_____

TIME OF TRANSPORT AND LOCATION_____

CLASSIFICATION OF INMATE   FEDERAL_____

STATE_____

COUNTY _Butler_____

CITY_____WHICH CITY_____

PERSON COMPLETING FORM _Stone_____

PLEASE SUBMIT THIS FORM TO THE COMMISSION OFFICE UPON
COMPLETION!!!!!!!!

Copy

*Gerry Worthy*
**JUL 14 2006**

wt 230   temp 96³po   Pulse 84   Bp $\frac{155}{92}$

Pt c/o ① eye red + Bilat hand swelling ____ B/p

R?

---

**NAME:** GERRY WORTHY
**DATE OF VISIT:** 07/14/06
**DATE OF BIRTH:** ▓▓▓▓▓▓

**CHIEF COMPLAINT:** Gerry presents via the jail complaining of swelling of the hands and redness of the left eye. He was apparently struck in the left eye during an altercation. It is also what happened as far as his hand swelling.

**OBJECTIVE:**
**VITAL SIGNS:** Weight 230 pounds, temperature 96.3, pulse 84, and blood pressure 165/92.
**HEENT:** Revealed ruptured blood vessel with a subconjunctival hemorrhage on the left eye.
**NECK:** Supple. ..
**LUNGS:** Clear.
**ABDOMEN:** Soft, benign with active bowel sounds.
**EXTREMITIES:** Revealed obvious swelling of both hands, the right much greater than the left. There was diffuse tenderness to palpation in both hands.

**X-RAY:** The x-ray did not reveal evidence of obvious fracture or dislocation.

**ASSESSMENT/PLAN:**
1. The patient with hand pain secondary to soft tissue trauma and probable impending contusions. We are going to treat him with Darvocet-N 100 #24, 1 every 4 to 6 hours as needed for pain and ice packs.
2. Subconjunctival hemorrhage. This will spontaneously resolved.

Roger H. Smith, D.O.

RHS:cbs/ls

**STABLER CLINIC, P.C.**

PHONE (334) 382-2681
FAX (334) 383-9541
300 NORTH COLLEGE ST.
GREENVILLE, ALABAMA

A. A. STABLER, JR., M. D.
DUANE J. WILLIAMS, M. D.
ROGER H. SMITH, D. O.

BNDD NO. AS6339887
BNDD NO. AW3366033
DEA # AS2751522

ACS NO. 6791
ACS NO. 14435
AL. LIC. NO. DO343

Mr.
Mrs.
Miss. _Coury Woats_    DATE _____

_Darvocet N-100_

_#20 (twenty)_    MR

_Sig: 1 q 6 h ⊕ ½ prn_

LABEL
REFILL

DISPENSE AS WRITTEN   M.D. D.O.   PRODUCT SELECTION PERMITTED   M.D. D.O.

COPY

# MEDICATION INFORMATION FORM    FACILITY/CODE: BUTLER CO JAIL (AL)(1B)

### PLEASE PRINT CLEARLY AND COMPLETE ALL FIELDS, SO THAT WE MAY PROCESS EACH ORDER ACCURATELY

LAST NAME: _Whatley_     FIRST NAME: _Gerry_

CIRCLE ONE:  CITY  (COUNTY)  STATE  FEDERAL

BILL TO:
(IF DIFFERENT ACCOUNT)

ALIAS IF KNOWN:

SS #:

ALLERGY:

BOOK IN #: _040000378_

BIRTHDATE:

CELL BLOCK:

INS #:

| DRUG NAME | STRENGTH | DIRECTIONS | PHYSICIAN | HOUR(S) GIVEN | START DATE | QTY | REFILLS |
|-----------|----------|------------|-----------|---------------|------------|-----|---------|
| See prescription | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

SIGNATURE: _____

M.D. SIGNATURE: _____

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE ADDRESSEE LISTED ABOVE. IF YOU ARE NEITHER THE INTENDED RECIPIENT, EMPLOYEE NOR AGENT RESPONSIBLE FOR DELIVERING THIS INFORMATION, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, ETC. IS STRICTLY PROHIBITED. IF YOU RECEIVED THIS FACSIMILE IN ERROR, PLEASE CALL 1(800)638-

FORM/AMEND INFO FORM CUSTOM 2001.DOC

**IHS Pharmacy**

Independent Health Services, Inc.
Post Office Box 1428
Rainsville, AL 35986

Phone: 1(800)638-3104
Fax:     1(800)638-9459

Copy

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Propoxyphene APAP | 8:00 10:00 8:00 2:00 | | | | | | | | | | | | | | | | | | | X | X | X | | X | X | X | | | | |

COPY

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | SS ADW | NM DDW NW DDW | DW DDW SS ADW |
| BT | | | | | | | | | | |

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | | NM DDW ISTL | | | MT ADW | | | | | | |
| L | SS ADW ISTL | T5 DDW ISTL | DW | SS ADW | | | | | | | |
| S | ADL DDW | C.S DDW | | | | | | | | | |
| BT | | DDW DB | BCG AS GW | | | | | | | | |

CHARTING FOR _____ THROUGH _____

| Physician | | Telephone No. | | |
|---|---|---|---|---|
| Alt. Physician | | Alt. Telephone | | Medical Record No. |
| Allergies | | Rehabilitative Potential | | |

Diagnosis _____

| Medicaid Number | Medicare Number | Approved By Doctor: | | | |
|---|---|---|---|---|---|
| | | By: | | Title: | Date: |
| RESIDENT  Gerry Werthey | | D.O.B. | Sex | Room # | Admission Date |
| | | | | Patient Code | |

18243

*Jerry Worthy*
AUG 0 2 2006

Wt 227      temp 98³po     Pulse 75 B/P 146/95

Pt c/o flu c ® hand pain + swelling ⟶ BLO
LPN
D/s

NAME: GERRY WORTHY
DATE OF VISIT: 08/02/06
DATE OF BIRTH: ~~██████~~

CHIEF COMPLAINT: Mr. Worthy presents via the jail complaining of continued discomfort in the right hand. He feels like he cannot extend the distal phalanx of the right middle finger.

PAST MEDICAL HISTORY: Please see July 14, 2006 dictation.

PHYSICAL EXAM:
MUSCULOSKELETAL: Revealed some fusiform swelling along the distal dorsal right middle finger metacarpal. It did appear to me that he was able to fully extend the distal phalanx and had complete extension throughout of the right middle finger.

ASSESSMENT/PLAN: The patient with right hand swelling. There may be a retained foreign body or other entity that was not seen on x-ray. Clinically, nothing is palpable there but he certainly does have the swelling as described. I do not believe that we have a ruptured tendon but in any event what we should do is give him and the county the option to proceed with MRI of the hand.

Roger H. Smith, D.O.

RHS:cbs/ls

8/15/06 Received phone call from jail that Albert McKee approved MRI to be scheduled. Will do so ⟶ BLO LPN

8/15/06 Pt scheduled for MRI ® hand for 8/17/06 @ 2:00pm jail made aware ⟶ BLO LPN



# SHERIFF'S OFFICE
## BUTLER COUNTY
334/382-6521 • 1-800-300-6344
GREENVILLE, ALABAMA 36037-1910

**DIANE HARRIS**
**SHERIFF**

### PLEASE COMPLETE FOR EACH INMATE RECEIVING MEDICAL TREATMENT

INMATE'S NAME *Gerry Worthy*    DATE *8-17-06*

REASON FOR MEDICAL CARE *MRI*

_____

_____

_____

TIME OF TRANSPORT AND LOCATION_____

CLASSIFICATION OF INMATE   FEDERAL_____

STATE_____

COUNTY *Butler*

CITY_____WHICH CITY_____

PERSON COMPLETING FORM *Store*

PLEASE SUBMIT THIS FORM TO THE COMMISSION OFFICE UPON
COMPLETION!!!!!!!!

COPY

## L.V. STABLER MEMORIAL HOSPITAL
### GREENVILLE, AL 36037

Patient Name: WORTHEY, GARRY D
Ordering Physician: Smith, R.
DOB: ▓▓▓▓▓▓▓
Exam Dt: 08/17/2006

Room #: OP
Account #: 941496
Film #: 155243

1 OF 1                          RADIOLOGY REPORT

Hand swelling/right hand

MRI OF THE RIGHT HAND:

There is abnormal soft tissue signal over the dorsal surface of the third metacarpal phalangeal joint. This is more towards the ulnar side and the extensor tendon is displaced dorsally and towards the radial side. This is a non-specific mass-like soft tissue area and is felt to most likely be some type of inflammatory mass. The underlying bone appears within normal limits with no evidence of osteomyelitis.

IMPRESSION:
Abnormal mass-like soft tissue prominence over the dorsal surface of the third metacarpal phalangeal joint with some displacement of the extensor tendon as described. This is most likely some type of inflammatory reaction or inflammatory mass.
There is no evidence of underlying osteomyelitis.

_____
Stanley B. Winslow, M.D.

DD: 08/18/2006
DT: 08/18/2006
SW/pc

RADIOLOGY REPORT



# SHERIFF'S OFFICE
## BUTLER COUNTY
334/382-6521 • 1-800-300-6344
GREENVILLE, ALABAMA 36037-1910

DIANE HARRIS
SHERIFF

FAX COVER SHEET

| | |
|---|---|
| Date: Sept. 7, 2006 | Total pages, including cover: 8 |
| Send To: Department of Corrections <br> Attention: Linda Miller <br> Fax No: (334) 353-9712 | From: Butler County Sheriff's Office <br> Fax No.: (334) 382-7491 <br> Office Location: Greenville, Al. |

Name: Perry Worthey

D.O.B.: ▮▮▮▮▮▮

S.O.C.: ▮▮▮▮▮▮

Race: B   Sex: M

Charge: Trafficking Cocaine, Poss of Marij 2nd

Date Arrested: 4/5/06

Date Transported to Corrections:

Comments: Sgt Brooks: Medical Sheets for Perry Worthey

Faxed By H. Smith   Date 9-7-06

## INMATE REQUEST FORM

**NAME** *Garry Worthey*    **DATE:** *5/10*    **TIME:** _____

**TO:** *Nurse*

- o Telephone call
- o Personal Problem
- o Notary
- o Special visit
- ● Medical
- o Sheriff
- o Grievance
- o Other

*5/10/06  5*
*2000*

*Requesting Sleeping medication*
*informed no available to*
*give —*
*Barbara Richardson*

BRIEFLY OUTLINE YOUR REQUEST AND GIVE TO THE CORRECTIONS OFFICER

*May I talk to the Nurse Today!*
*Thank You!*

**CORRECTIONS OFFICER** _____ **DATE:** _____

**TIME GIVEN TO CORRECTIONS OFFICER** _____

# INMATE REQUEST FORM

NAME *Gerry Worthy* DATE: 6/5/06 TIME: _____

TO: *Nurse*

- o Telephone call
- o Personal Problem
- o Notary
- o Special visit
- o Medical
- o Sheriff
- o Grievance
- o Other

6/5/06  S as below

O tiny raised or
both shoulder
some fading no
with tiny
o redness swelli
or drainage
A tiny raised areas
P reevaluate as needed

BRIEFLY OUTLINE YOUR REQUEST AND GIVE TO THE CORRECTIONS

*Nurse check this subject out please he says his sho is breaking out in small pimple or bumps*

CORRECTIONS OFFICER *Stone* DATE: 6-5-

TIME GIVEN TO CORRECTIONS OFFICER 1435

# INMATE REQUEST FORM

NAME *Garry Worthey* DATE: 7-20-06 TIME:____

TO: *Nurse*

- ○ **Telephone call**
- ○ **Personal problem**
- ○ **Notary**
- ○ **Special visit**
- ○ **Medical**
- ○ **Sheriff**
- ○ **Grievance**
- ○ **Other**

7/24 S as below
1845 E Hand. Swollen

requesting that MD
appointment be checked
on - suppose to have
seen the MD a week
ago.
P L an MD appointment
*Barbara Edwards* R

## BRIEFLY OUTLINE YOUR REQUEST AND GIVE TO THE CORRECTIONS OFFICER

I would like to see nurse to look
my hand doctor told me to come
back in a week.

CORRECTIONS OFFICER *Store* DATE: 7-20-06
TIME GIVEN TO CORRECTIONS OFFICER 1320

BS

# INMATE REQUEST FORM

NAME *Gerry Worthey* DATE: 7/30/06 TIME: 2200

TO: *Nurse Richards*

7/31/06
2145

5 ① hand painful and swollen for about 3 weeks saw md and was suppose to return if pain was still present after 1 week

- o Telephone call
- o Personal problem
- o Notary
- o Special visit
- ✓ Medical
- o Sheriff
- o Grievance
- o Other

Do not charge for Pain Pill until after seen by md

O ① hand swollen wit limited movement
A° swollen ① hand
P make follow up md apt
Foxboro Ridlo

## BRIEFLY OUTLINE YOUR REQUEST AND GIVE TO THE CORRECTIONS OFFICER

*Nurse Richards: Please check Mr. Worthey's wrist/hand*

*for follow-up.*

CORRECTIONS OFFICER _____ DATE: 7/30/06

TIME GIVEN TO CORRECTIONS OFFICER ___2200___

# INMATE REQUEST FORM

NAME _Garry Worthey_    DATE: _8-4-06_    TIME: _____

TO: _Nurse_

- ◇ Telephone call
- ◇ Personal problem
- ◇ Notary
- ◇ Special visit
- ◇ Medical
- ◇ Sheriff
- ◇ Grievance
- ◇ Other

_inmate has been_
_seen -_
_Barbara Picard_

## BRIEFLY OUTLINE YOUR REQUEST AND GIVE TO THE CORRECTIONS OFFICER

_I would like to see the nurse_

_concerning my hand. Today Please_

_Thank You!_

CORRECTIONS OFFICER _W Smith_    DATE: _8-4-06_

TIME GIVEN TO CORRECTIONS OFFICER _(24)_

# INMATE REQUEST FORM

NAME _Gerry Worthey_ DATE: _8/11/06_ TIME: _____

TO: _Nurse_____

- ○ **Telephone call**
- ○ **Personal problem**
- ○ **Notary**
- ○ **Special visit**
- ○ **Medical**
- ○ **Sheriff**
- ○ **Grievance**
- ○ **Other**

8/11/06  S inmate states
1800     he would have an
         appointment to see a
         specialist about wrist

O (R) hand remains with
   limited movement
   warm & dry to touch
   cap refill < 3 sec.

A (R) hand injury

P re assess as needed
                        Brook
                        Sure

**BRIEFLY OUTLINE YOUR REQUEST AND GIVE TO THE CORRECTIONS OFFICER**

_PLEASE   RE-CHECK   HAND/WRIST._

_____

_____

_____

_____

_____

CORRECTIONS OFFICER _____ DATE: _8/11/06_

TIME GIVEN TO CORRECTIONS OFFICER _1600_